United States District Court
Southern District of Texas
**ENTERED**
March 03, 2021
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:20-cv-00163

T.W. LaQuay Marine, LLC, *Plaintiff*,

v.

Great Lakes Dredge & Dock Company, LLC, *Defendant*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, United States District Judge.

This dispute seeks damages under the Miller Act and other causes of action arising from an allegedly underperforming dredging vessel that the plaintiff, T.W. LaQuay Marine, leased from the defendant, Great Lakes Dredge & Dock Company. Based on a forum-selection clause in the parties' contract, Great Lakes seeks to dismiss the case or, alternatively, transfer the action to the Northern District of Illinois (Dkt. 6). For the reasons below, the court grants that motion and transfers the case.

### I.   Background

The U.S. Army Corps of Engineers awarded LaQuay a contract to dredge the Brazos Island Harbor Channel, the Brownsville Main Ship

Channel, and the Port Isabel Channel.[1] The job required a dredging vessel, and LaQuay turned to Great Lakes, a company it had used before, to seek out a dredge to charter. LaQuay representatives traveled to Nebraska to inspect a Great Lakes dredge, the *Iowa*, and its supporting equipment.[2] After the representatives completed their inspection, LaQuay alleges that Steve Lane of Great Lakes orally represented—and confirmed in an email—that the *Iowa* could dredge 1,450 cubic yards of material per working hour.[3] Based on this representation, as well as LaQuay's prior positive relationship with Great Lakes, LaQuay took the *Iowa* from Great Lakes under a bareboat charter.[4]

The charter included a forum-selection and choice-of-law clause:

> Each Party hereby submits to the exclusive jurisdiction of the United States District Court for the Northern District of Illinois, for purposes of all legal proceedings arising out of or relating to this Charter or the transactions contemplated hereby. EACH PARTY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, (A) ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE IN SUCH COURT OF ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED BY THIS CHARTER, (B) ANY CLAIM THAT ANY SUCH ACTION OR PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM . . . .[5]

---

[1] Dkt. 9 at 2.

[2] Dkt. 9-1 at 1.

[3] Dkt. 9 at 3; Dkt. 9-2.

[4] *See* Dkt. 9-1 ¶ 6; Dkt. 6-3.

[5] Dkt. 6-3 ¶ 18.

After receiving the vessel, LaQuay alleges that the *Iowa* did not perform well and suffered a litany of problems.[6] LaQuay ultimately returned the *Iowa* and sought to outfit a replacement vessel to complete its work for the Corps of Engineers.

On May 18, 2020, LaQuay sued Great Lakes, seeking a declaratory judgment and damages under the charter.[7] The following month, Great Lakes moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), or alternatively to transfer venue to the Northern District of Illinois.

## II.    Standard

A party may move to dismiss a case based on a forum-selection clause under Rule 12(b)(3).[8] Forum-selection clauses are considered "prima facie valid" and are generally enforced unless shown to be "unreasonable" under the circumstances.[9] The party resisting a forum-selection clause bears a "heavy burden of proof."[10] A forum-selection clause may be unreasonable if:

---

[6] Dkt. 9 at 3–6; Dkt 9-1 at 2–3.

[7] *See* Dkt. 1.

[8] *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).

[9] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997).

[10] *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (quoting *Haynsworth*, 121 F.3d at 963).

(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.[11]

Relatedly, 28 U.S.C. § 1404 also provides that a district court "for the convenience of parties and witnesses" and "in the interest of justice . . . may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[12] When determining whether a transfer would serve the "convenience of parties and witnesses" and the "interest of justice," courts weigh a number of public and private factors.[13] The private factors include:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.[14]

The public factors include:

(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will

---

[11] *Haynsworth*, 121 F.3d at 963.

[12] 28 U.S.C. § 1404.

[13] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2003) (per curiam).

[14] *Id.*

govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.[15]

When considering these factors, "[t]he presence of a forum-selection clause . . . figures centrally in the district court's calculus,"[16] and a court "should ordinarily transfer the case to the forum specified in that clause."[17]

## III. Analysis

### A. Fraud

LaQuay first argues that the forum-selection clause is invalid because LaQuay entered the charter based on Great Lake's alleged misrepresentations about the *Iowa*'s production capacity and seaworthiness, rendering the entire agreement void at its inception.[18]

A dispute arising out of alleged fraud, however, does not automatically invalidate a forum-selection clause.[19] The resisting party must demonstrate that the fraud is specific to the clause.[20] The alleged fraud that LaQuay details pertains to Great Lake's representations about the *Iowa*'s condition and capabilities—LaQuay does not explain how Great Lake's representations

---

[15] *Id.*

[16] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

[17] *Atl. Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62 (2013)

[18] Dkt. 9 at 7.

[19] *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518–21 (1974).

[20] *Braspetro Oil Servs. Co.-Brasoil v. Modec (USA), Inc*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam).

fraudulently induced LaQuay to agree to the Northern District of Illinois as a forum. Moreover, the inclusion of the forum-selection clause is not overreaching. The clause was not buried surreptitiously in the charter. Rather, it is found near the end of the charter under the heading, "Law and Jurisdiction," with its warning that each party waives any objection to venue in the Northern District of Illinois accented with small caps.[21]

Accordingly, the court finds that the incorporation of the forum-selection clause was not the product of fraud or overreaching; so the clause is enforceable.[22]

## B. Convenience and Fairness

LaQuay next argues that dismissal or transfer of the case to the Northern District of Illinois would be gravely inconvenient and unfair and deprive it of its day in court. LaQuay notes that it is a resident of the Southern District of Texas, and that the operative facts occurred here, too. LaQuay further notes that, as compared to Great Lakes, it is a small company.[23] In addition, one of its two principal executives, Tim LaQuay, attends bi-monthly physical therapy and is recovering from recent heart surgery.[24] The

---

[21] Dkt. 6-3 ¶ 18.

[22] *See Haynsworth*, 121 F.3d at 963.

[23] Dkt. 9 at 10.

[24] Dkt. 9-1 at 5.

heavy burden of participating in the litigation in Illinois would thus fall unfairly on LaQuay's remaining principal executive, Linda LaQuay. LaQuay also notes that Great Lakes plans on imminently moving its headquarters to Houston, so it would be more convenient for both parties if the case remained in this district.[25]

Nevertheless, the court disagrees that transferring this case to the Northern District of Illinois, per the charter, would be gravely unfair or deprive LaQuay of its day in court. The Supreme Court has explained that the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."[26] While LaQuay may be a small company, it is not unsophisticated and has substantial experience in the dredging industry.[27] By signing the charter, the court must conclude that LaQuay knew what it was committing itself to. LaQuay agreed that it would "submit" to the "exclusive jurisdiction of the United States District Court for the Northern District of Illinois, for purposes of all legal proceedings arising out of or relating to this Charter." Indeed, as previously described, the forum-

---

[25] Dkt. 17.

[26] *Atl. Marine Constr.*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

[27] *See* Dkt. 9-1 at 1–2.

selection clause is prominently featured in the charter and includes a waiver by LaQuay, highlighted with small caps, of "any claim that any such action or proceeding has been brought in an inconvenient forum." Even more, LaQuay concedes that its prior experience with Great Lakes has been positive, and that its representatives traveled to Nebraska to inspect the *Iowa* before signing the charter.[28] There is also no indication that Linda LaQuay would need to spend a significant amount of time in Illinois for the litigation. Accordingly, the court concludes that enforcement of the forum-selection clause would not for "all practical purposes" deprive LaQuay of its day in court. The forum-selection clause is not unreasonable.[29]

## C. Transfer to the Northern District of Illinois

Instead of dismissing the case for improper venue, the court concludes that transfer to the Northern District of Illinois is more appropriate. First, this case could have been originally filed in the Northern District of Illinois based on federal-question jurisdiction.[30]

The private and public factors also support transfer. The Supreme Court has held that when there's a forum-selection clause, "the plaintiff's choice of forum merits no weight" because the plaintiff "effectively exercised

---

[28] *See id.*

[29] *See Haynsworth*, 121 F.3d at 963.

[30] *See Volkswagen AG*, 371 F.3d at 203.

its 'venue privilege'" before the dispute arose, and "[o]nly that initial choice deserves deference."[31] Further, a court need not consider the parties' other private interests because when they "agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."[32]

This leaves just the public-interest factors, which only "rarely defeat a transfer motion."[33] Nothing indicates this case would create any administrative difficulties if transferred to Illinois. While the *Iowa* was to perform in Texas, the charter was not negotiated only in Texas, and Illinois has an interest in the enforcement of its corporate citizens' contracts. The charter also specifies that it is governed by maritime law or, if maritime law is not applicable, Illinois law.[34] Both this court and the Northern District of Illinois are familiar with maritime law, but a court in the chosen forum would be more familiar with Illinois law. There is also no indication of any conflict-of-law issues. Thus, the public-interest factors do not compel the court to ignore the parties' contracted choice of forum.

---

[31] *Atl. Marine Constr.*, 571 U.S. at 63–64.

[32] *Id.* at 64 (quoting *Bremen*, 407 U.S. at 17–18) (cleaned up).

[33] *Id.*

[34] Dkt. 6-3 ¶ 18.

\*       \*       \*

For the reasons above, the court grants Great Lakes' motion under 28 U.S.C. § 1404 (Dkt. 6) and orders that this case be transferred to the United States District Court for the Northern District of Illinois.

Signed on Galveston Island on the 3rd day of March, 2021.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE